Daniel Sadeh, Esq.
**HALPER SADEH LLP**
375 Park Avenue, Suite 2607
New York, NY 10152
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| WASEEM KHAN, | Case No: |
| Plaintiff, | |
| v. | JURY TRIAL DEMANDED |
| MAXIM INTEGRATED PRODUCTS, INC., TRACY ACCARDI, JAMES R. BERGMAN, JOSEPH R. BRONSON, TUNÇ DOLUCA, ROBERT E. GRADY, MERCEDES JOHNSON, WILLIAM P. SULLIVAN, WILLIAM D. WATKINS, and MARYANN WRIGHT, | |
| Defendants. | |

Plaintiff Waseem Khan ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

## NATURE OF THE ACTION

1.      This is an action against Maxim Integrated Products, Inc. ("Maxim" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange

Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed acquisition (the "Proposed Transaction") of Maxim by Analog Devices, Inc. ("Analog") and Magneto Corp. ("Acquisition Sub"), a wholly owned subsidiary of Analog.

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, and the alleged misstatements entered and the subsequent damages occurred in this District.

5.      In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.      Plaintiff is, and has been at all relevant times hereto, an owner of Maxim common stock.

7.      Defendant Maxim designs, develops, manufactures, and markets a range of linear and mixed-signal integrated circuits in the United States, Asia, and Europe. The Company is

incorporated in Delaware. The Company's common stock trades on the NASDAQ Global Select Market under the ticker symbol, "MXIM."

8.  Defendant Tracy Accardi ("Accardi") is a director of the Company.

9.  Defendant James R. Bergman ("Bergman") is a director of the Company.

10.  Defendant Joseph R. Bronson ("Bronson") is a director of the Company.

11.  Defendant Tunç Doluca ("Doluca") is President, Chief Executive Officer ("CEO"), and a director of the Company.

12.  Defendant Robert E. Grady ("Grady") is a director of the Company.

13.  Defendant Mercedes Johnson ("Johnson") is a director of the Company.

14.  Defendant William P. Sullivan ("Sullivan") is a director of the Company.

15.  Defendant William D. Watkins ("Watkins") is a director of the Company.

16.  Defendant MaryAnn Wright ("Wright") is a director of the Company.

17.  Defendants Accardi, Bergman, Bronson, Doluca, Grady, Johnson, Sullivan, Watkins, and Wright are collectively referred to herein as the "Individual Defendants."

18.  Defendants Maxim and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A.  The Proposed Transaction

19.  On July 13, 2020, Maxim and Analog issued a press release announcing that they had entered into a definitive agreement under which Analog would acquire Maxim in an all-stock transaction. Under the terms of the agreement, Maxim stockholders would receive 0.630 of a share of Analog common stock for each share of Maxim common stock they hold at the closing of the transaction, with Maxim stockholders expected to own approximately 31% of the combined

company. The press release states, in pertinent part:

### Analog Devices Announces Combination with Maxim Integrated, Strengthening Analog Semiconductor Leadership

- Increased scale and diversification from $8.2 billion[1] revenue portfolio that is positioned to capitalize on key secular growth trends
- Enhances domain expertise and breadth of engineering capabilities to develop more complete solutions to solve customers' most complex problems
- Expected to be accretive to free cash flow at closing and adjusted EPS in 18 months post-close with $275 million of cost synergies by the end of year two

July 13, 2020 06:00 AM Eastern Daylight Time

NORWOOD, Mass. & SAN JOSE, Calif.--(BUSINESS WIRE)--Analog Devices, Inc. (Nasdaq: ADI) and Maxim Integrated Products, Inc. (Nasdaq: MXIM) today announced that they have entered into a definitive agreement under which ADI will acquire Maxim in an all stock transaction that values the combined enterprise at over $68 billion[2]. The transaction, which was unanimously approved by the Boards of Directors of both companies, will strengthen ADI as an analog semiconductor leader with increased breadth and scale across multiple attractive end markets.

Under the terms of the agreement, Maxim stockholders will receive 0.630 of a share of ADI common stock for each share of Maxim common stock they hold at the closing of the transaction. Upon closing, current ADI stockholders will own approximately 69 percent of the combined company, while Maxim stockholders will own approximately 31 percent. The transaction is intended to qualify as a tax-free reorganization for U.S. federal income tax purposes.

\*     \*     \*

Upon closing, two Maxim directors will join ADI's Board of Directors, including Maxim President and CEO, Tunç Doluca.

\*     \*     \*

### Timing and Approvals

The transaction is expected to close in the summer of 2021, subject to the satisfaction of customary closing conditions, including receipt of U.S. and certain non-U.S. regulatory approvals, and approval by stockholders of both companies.

### Advisors

Morgan Stanley served as lead financial advisor to ADI. BofA Securities also served as a financial advisor. Wachtell, Lipton, Rosen & Katz served as legal counsel.

J.P. Morgan served as exclusive financial advisor to Maxim, and Weil, Gotshal & Manges LLP served as legal counsel.

*       *       *

### About Analog Devices

Analog Devices (Nasdaq: ADI) is a leading global high-performance analog technology company dedicated to solving the toughest engineering challenges. We enable our customers to interpret the world around us by intelligently bridging the physical and digital with unmatched technologies that sense, measure, power, connect and interpret. Visit http://www.analog.com.

### About Maxim Integrated

Maxim Integrated develops innovative analog and mixed-signal products and technologies to make systems smaller and smarter, with enhanced security and increased energy efficiency. We are empowering design innovation for our automotive, industrial, healthcare, mobile consumer, and cloud data center customers to deliver industry-leading solutions that help change the world. Learn more at http://www.maximintegrated.com.

20.     On August 18, 2020, Defendants caused to be filed with the SEC a Form S-4 Registration Statement (the "Registration Statement") in connection with the Proposed Transaction.

**B. The Registration Statement Contains Materially False and Misleading Statements and Omissions**

21.     The Registration Statement, which recommends that Maxim shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) Maxim's and Analog's financial projections; (ii) the financial analyses performed by Maxim's financial advisor, J.P. Morgan Securities LLC ("J.P. Morgan"), in connection with its fairness opinion; and (iii) the sales process leading up to the Proposed Transaction.

22.     The omission of the material information (referenced below) renders the following

sections of the Registration Statement false and misleading, among others: (i) Background of the Merger; (ii) Recommendation of the Maxim Board of Directors; Maxim's Reasons for the Merger; (iii) Opinion of Maxim's Financial Advisor; (iv) Analog Devices Unaudited Financial Projections; and (v) Maxim Unaudited Financial Projections.

23.     Plaintiff may seek to enjoin the anticipated shareholder vote on the Proposed Transaction unless and until the material misstatements and omissions (referenced below) are remedied. Unless remedied, Maxim shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff seeks to recover damages resulting from Defendants' misconduct.

### 1.   Material Omissions Concerning Maxim's and Analog's Financial Projections

24.     The Registration Statement omits material information concerning Maxim's and Analog's financial projections.

25.     The Registration Statement contains: (1) financial projections of Analog prepared by Analog management for fiscal years ending October 2020 through October 2023, which Analog management annualized to calendar years 2020 through 2022, and then extrapolated for calendar years 2023 through 2029 (the "Analog Devices Projections"); (2) financial projections of Maxim for fiscal years ending June 2020 through June 2023, which Analog management annualized to calendar years 2020 through 2022 and adjusted to reflect "a more conservative view of Maxim's potential performance, primarily by lowering expected revenue growth rates and gross margins while maintaining Maxim's projected EBITDA margins" (the "Analog Devices-Adjusted Maxim

Projections," and together with the Analog Devices Projections, the "Analog Projections").[1]

26.     The Registration Statement, however, fails to disclose the following concerning the Analog Projections: (1) all line items used to calculate: (i) Adjusted EBITDA, and (ii) Unlevered Free Cash Flow; and (2) a reconciliation of all non-GAAP to GAAP metrics.

27.     The Registration Statement contains: (1) financial projections of Maxim prepared by Maxim management for fiscal years ending June 2020 through June 2023, which Maxim management extrapolated for fiscal years ending June 2024 through June 2029 (the "Maxim Unaudited Projections"); and (2) financial projections of Analog prepared by Analog for fiscal years ending October 2020 through October 2023, which Maxim management then extrapolated for fiscal years ending October 2024 through October 2029 (the "Maxim-Extrapolated Analog Projections," and together with the Maxim Unaudited Projections, the "Maxim Projections").[2]

28.     The Registration Statement, however, fails to disclose the following concerning the Maxim Projections: (1) all line items used to calculate: (i) EBITDA, (ii) EBIAT, and (iii) Unlevered Free Cash Flow; and (2) a reconciliation of all non-GAAP to GAAP metrics.

29.     The Registration Statement provides that "Analog Devices management and Maxim management agreed that the estimated synergies *include* approximately $275 million of gross pre-tax cost synergies estimated to be potentially realizable within 24 months following the closing," but does not adequately disclose the complete amount of the estimated synergies to be

---

[1] The Analog Devices Projections "for fiscal years ending October 2020 through October 2023 (but not the annualized projections for calendar years 2020 through 2022 or the extrapolations for calendar years 2023 through 2029) were provided to Maxim management in connection with its consideration and evaluation of a merger with Analog Devices and to Maxim's financial advisor, J.P. Morgan." *See* Registration Statement at 110.

[2] The Maxim Projections were provided to the Board and J.P. Morgan. *See* Registration Statement at 113.

potentially realizable by the combined company in connection with the Proposed Transaction. *See* Registration Statement at 116 (emphasis added). The omission of this information is material because, *inter alia*, "[t]he estimated synergies were provided to Analog Devices' and Maxim's respective boards of directors and to their respective financial advisors" in connection with their respective recommendations and fairness opinions.

30.     When a company discloses non-GAAP financial metrics in a Registration Statement that were relied upon by its board of directors in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose, pursuant to SEC Regulation G, all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.[3]

31.     The disclosure of the aforementioned projected financial information is material because it would provide Maxim shareholders with a basis to project Maxim's and Analog's future financial performance and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company.

---

[3] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited Aug. 26, 2020) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

Without such information, which is uniquely possessed by Maxim and its financial advisor, the Company's shareholders are also unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction.

32.     Accordingly, in order to cure the materially misleading nature of the aforementioned financial projections, Defendants must provide a reconciliation table of the aforementioned non-GAAP metrics to their most comparable GAAP metrics. Defendants must also disclose the line item projections that were used to calculate these metrics. Such projections are necessary to make the non-GAAP projections included in the Registration Statement not misleading.

33.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Maxim shareholders.

## 2.   Material Omissions Concerning J.P. Morgan's Financial Analyses

34.     In connection with the Proposed Transaction, the Registration Statement omits material information concerning analyses performed by J.P. Morgan.

35.     The Registration Statement fails to disclose the following concerning J.P. Morgan's "*Discounted Cash Flow Analysis*" of Maxim: (1) all line items used to calculate the unlevered free cash flows that Maxim is expected to generate during fiscal years 2021 through 2029; (2) the range of terminal values for Maxim; (3) the individual inputs and assumptions underlying the (i) terminal growth rates ranging from 2.5% to 3.5%; and (ii) discount rate range of 8.25% to 10.25%; (4) the net cash balance of Maxim as of June 30, 2020; and (5) Maxim's fully diluted shares outstanding.

36.     The Registration Statement fails to disclose the following concerning J.P. Morgan's "*Discounted Cash Flow Analysis*" of Analog: (1) all line items used to calculate the unlevered free cash flows that Analog is expected to generate during fiscal years 2020 through 2029; (2) the range

of terminal values for Analog; (3) the individual inputs and assumptions underlying the (i) terminal growth rates ranging from 2.5% to 3.5%; and (ii) discount rate range of 8.25% to 10.25%; (4) the net debt balance of Analog Devices as of May 2, 2020; and (5) Analog's fully diluted shares outstanding.

37. With respect to J.P Morgan's "*Discounted Equity Research Analyst Price Targets*," the Registration Statement fails to disclose: (1) the individual price targets observed by J.P. Morgan in its analysis; and (2) the sources thereof.

38. The valuation methods, underlying assumptions, and key inputs used by J.P. Morgan in rendering its purported fairness opinion must be fairly disclosed to Maxim shareholders. The description of J.P. Morgan's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, Maxim shareholders are unable to fully understand J.P. Morgan's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to Maxim shareholders.

**3. Material Omissions Concerning the Sales Process Leading up to the Proposed Transaction**

39. The Registration Statement omits material information concerning the sales process leading up to the Proposed Transaction.

40. The Registration Statement provides that, on March 9, 2020, Defendant Doluca and the CEO of "Company B," a semiconductor company, held a meeting. During the meeting, the CEO of Company B "inquired whether Maxim might be interested in evaluating a potential at-market 'merger of equals' transaction with Company B."

41. On May 7, 2020, the Board, members of Maxim senior management, and

10

representatives of J.P. Morgan held a meeting where they discussed, *inter alia*, the merits of "pursuing a potential transaction with either Analog Devices or Company B[.]" The Registration Statement provides, in pertinent part:

> The Maxim board of directors [] concluded that a potential combination with Company B would be unlikely to provide greater value for Maxim stockholders than the potential transaction with Analog Devices. In reaching this conclusion, the Maxim board of directors considered, among other factors, that Company B's product lines would not be as complementary to Maxim's product lines as Analog Devices' products would be, that the proposed transaction would not result in synergies nearly as significant as those that were expected from a combination with Analog Devices and that any potential merger-of-equals transaction with Company B would likely involve an "at-market" exchange ratio that would provide little or no premium to Maxim stockholders for their shares. The Maxim board of directors authorized Mr. Doluca to inform the Chief Executive Officer of Company B that the Maxim board of directors was not interested in pursuing a possible transaction with Company B at that time.

42.     Thereafter, "on June 14, 2020, Analog Devices and Maxim entered into [an] exclusivity agreement, pursuant to which Maxim agreed to negotiate exclusively with Analog Devices through July 6, 2020, which period would automatically extend for successive one-week periods unless either party communicated that it desired to terminate negotiations."

43.     On July 12, 2020, Maxim and Analog finalized and entered into the merger agreement. The companies announced the Proposed Transaction the next day.

44.     Between May 7, 2020 (the date the Board rejected a potential merger with Company B) and July 13, 2020 (the date the Company announced the Proposed Transaction), various publicly-traded semiconductor stocks rallied. During this time, the PHLX Semiconductor Sector Index, a leading index composed of semiconductor companies primarily involved in the design, distribution, manufacture, and sale of semiconductors, including Maxim and Analog, rose approximately 18%.

45.     The Registration Statement fails to disclose whether Company B submitted any

further offers or proposals to Maxim, or made further attempts to discuss a potential strategic transaction with Maxim after May 7, 2020. This information is particularly material in light of, *inter alia*, Company B's earlier proposal and that various semiconductor stocks appreciated in value between May 2020 and July 2020.

46.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Maxim shareholders.

**<u>COUNT I</u>**
**For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder**
**<u>Against All Defendants</u>**

47.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

48.     During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Registration Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

49.     Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Registration Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Registration Statement.

50.     The false and misleading statements and omissions in the Registration Statement

are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

51.     By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

52.     Because of the false and misleading statements and omissions in the Registration Statement, Plaintiff is threatened with irreparable harm.

**COUNT II**
**Violations of Section 20(a) of the Exchange Act**
**Against the Individual Defendants**

53.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

54.     The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Registration Statement.

55.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Registration Statement, and to correct promptly any public

statements issued by the Company which were or had become materially false or misleading.

56.     In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Registration Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Registration Statement at issue contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, those Individual Defendants were directly involved in the making of the Registration Statement.

57.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Registration Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

58.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

59.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.      Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to the Company's shareholders;

B.      In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.      Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D.      Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E.      Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: August 26, 2020

Respectfully submitted,

**HALPER SADEH LLP**

By: /s/ Daniel Sadeh
Daniel Sadeh, Esq.
Zachary Halper, Esq. (to be admitted *pro hac vice*)
375 Park Avenue, Suite 2607
New York, NY 10152
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com
        zhalper@halpersadeh.com

*Counsel for Plaintiff*